UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

DEBBIE LAGRASSA,

                Plaintiff,

    -against-

AUTOONE INSURANCE COMPANY

                Defendant.
----------------------------------------------------------X

**MEMORANDUM & ORDER**

Civil Action No. 07-1072

**APPEARANCES:**

**Gabor & Gabor**
Attorneys for Plaintiff
400 Garden City Plaza
Suite 406
Garden City, New York 11530
By: David G. Gabor, Esq.

**Crowell & Moring LLP**
Attorneys for Defendant
153 East 53rd St., 31st Floor
New York, New York 10022
By: Jeffrey W. Pagano, Esq.
    Ira M. Saxe, Esq.

**HURLEY, Senior District Judge:**

      Plaintiff Debbie LaGrassa ("Plaintiff" or "LaGrassa") commenced this action asserting various claims of employment discrimination and retaliation against her former employer defendant Autoone Insurance Company ("Defendant" or "Autoone"). Presently before the Court are Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Plaintiff's cross-motion to file a second amended complaint. For the reasons set forth below, the motion to dismiss is granted in part and denied in part, and the motion to further amend her

complaint is granted in part and denied in part.

*Background*

**I. The Amended Complaint**

The following facts are taken from the amended complaint and viewed in the light most favorable to the Plaintiff, the non-moving party. *See Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002).

Plaintiff is a female born on July 1, 1956 and is the mother of two Asian daughters. Plaintiff was hired by Defendant on or about June 4, 2002 and worked in the customer service department as a telephone underwriting manager. In that position she was responsible for interviewing, hiring and firing staff, organizing and implementing team meetings, and managing, training and directing personnel to increase productivity and improve performance. Her supervisors were Ed Reilly ("Reilly") and Chris Wukovits ("Wukovits").

According to Plaintiff, she was subject to disparate treatment because of her gender, discriminated against because of her age, her adoption of Asian children and her opposition to discrimination on the basis of race and color, and retaliated against due to her opposition to discrimination due to race and color and her complaints of discrimination. She offers in her amended complaint the following facts in support of her claims:

- From the commencement of her employment, Reilly intentionally scheduled meeting for times when he knew it would be difficult for Plaintiff to attend. Specifically, he would schedule meetings for 5:00 p.m. knowing Plaintiff had to leave to attend evening college classes, eventually forcing Plaintiff to withdraw from her classes.
- Other customer service managers commented to Plaintiff that Reilly treated her in a

disparate manner as compared to her colleagues.

- The first year after she and another colleague helped Reilly put together the customer service call center, all the managers received a yearly bonus except for the plaintiff.

- On or about May 5, 2005 Wukovits sent Plaintiff and one Lynn Catizone emails concerning their absences. When Plaintiff advised Wukovits that she was out because her daughter was almost put in the hospital, Wukovits "changed his mind and changed all Plaintiff's absences to planned." When Plaintiff asked why he did that, he admitted that he was only going to put Plaintiff on warning because he was mad that Catizone and Plaintiff had not answered more phone calls the day before.

- Plaintiff was asked by Reilly and Wukovits to "call the queue and hang up" to make the department's numbers look better. Plaintiff was uncomfortable with this suggestion and asked the advise of someone in Human Resources who suggested that all Plaintiff has to do was tell Wukovits that she was uncomfortable with inflating the departmental statistics.

- In or about October 2002, plaintiff was advised by three co-workers that she would be treated better if she were male.

- Wukovits told Plaintiff that "maybe Ed has issues with women or maybe he just had a personality conflict with you."

- In December 2003, Wukovits told Plaintiff "if you think you are crazy, you are not. I see it." This statement was in reference to the way Reilly treated Plaintiff. According to Wukovits, Reilly would not deal with the Plaintiff's team directly, but would deal directly with other manager's teams.

- Wukovits also told Plaintiff that Reilly signed off easily on endorsements for Wukovits, but for female managers, Reilly would scrutinize the endorsements. Wukovits also told Plaintiff that Reilly was especially critical of Plaintiff's work.

- In December 2004, Plaintiff spoke to Ms. Cicerello in human resources about her six month review. Cicerello agreed that Plaintiff should have received a higher evaluation in two areas given the comments that were made by Reilly. The review was not, however, addressed further.

- On January 19, 2004, Reilly confronted plaintiff about being late that morning. Plaintiff advised Reilly that she had called him late Sunday evening and first thing Monday morning and left him voicemails each time. Reilly told Plaintiff she should go in the phone queue for two hours instead of making up the time, a punitive measure which Plaintiff claims had to do with gender bias.

- Also on January 19, 2004, Plaintiff went to human resources and advised Ms. Cicerello that she was really upset with how Reilly treated her and could no longer put up with his harsh treatment due to her gender. Cicerello advised Plaintiff that there was nothing Plaintiff could do.

- On January 21, 2004, Plaintiff spoke to the manager for human resources and "explained to her what was going on in Customer Service Underwriting." Plaintiff was advised that this type of treatment comes from the top down.

- During a meeting on September 7, 2005, Wukovits made multiple inappropriate comments regarding Asians. Plaintiff complained about the comments at the meeting. Plaintiff also complained about the comments to the assistant vice president of human

resources who told Plaintiff "it sound like you are working in a horrible department up there."

- On September 20, 2005 Plaintiff received a warning which was "retaliation for having opposed racism in the workplace" and Plaintiff complained to human resources that the warning was in retaliation for opposing discriminatory comments made by Wukovits.

- On May 9, 2006, Defendant terminated Plaintiff's employment

- Defendant was listening to Plaintiff's private telephone calls, something that was not being done with other employees.

- Defendant filled Plaintiff's position with a much younger male employee.

## II. Procedural Background

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 29, 2006 and received a right to sue letter dated February 27, 2007. Plaintiff filed the instant action on March 13, 2007. On May 17, 2007, an amended complaint was filed.

## III. Claims Asserted

Plaintiff asserts claims for (1) gender disparate treatment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq. (first cause of action) and the New York State Human Right Law ("NYSHRL"), N.Y. Exec. Law §§ 290 et seq. (second cause of action); (2) retaliation for her complaints of gender discrimination in violation of Title VII (third cause of action) and the NYSHRL (fourth cause of action); (3) national origin and ethnicity discrimination in violation of Title VII (fifth cause of action) and the NYSHRL (sixth cause of action); (3) retaliation for her opposition to race and color discrimination in violation of Title VII

5

(seventh cause of action) and the NYSHRL (eighth cause of action); (4) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq. (ninth cause of action) and the NYSHRL (tenth cause of action).

*Discussion*

**I. Standards**

    **A. Motion to Dismiss**

A complaint is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The test is whether the plaintiff is entitled to offer evidence to support her claim, not whether she is ultimately likely to prevail. *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). A court must liberally construe the claims and "accept[] all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor." *ATSI Commcn's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *accord Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007).

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court recently addressed the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6). In *Bell Atl. Corp. v. Twombly*, – U.S.–, 127 S. Ct. 1955 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974.

6

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 1964-65 (citations and internal quotation marks omitted). However, *Twombly* "explicitly disclaimed that it was 'requir[ing] heightened fact pleading of specifics,' . . . and emphasized the continued viability of *Swierkiewicz* [*v. Sorema*, 534 U.S. 506 (2002)] . . .which had rejected a heightened pleading standard." *Iqbal v. Hasty*, 490 F.3d 143, 156 (2d Cir. 2007) (internal citations omitted).

The Second Circuit has stated that *Twombly* does not require a universally heightened standard of fact pleading, but "instead requir[es] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" *Iqbal*, 490 F.3d at 157-58. In other words, *Twombly* "'require[s] enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1974)). Although *Twombly* did not make clear whether the plausibility standard applies beyond the antitrust context, the Second Circuit has "declined to read *Twombly's* flexible 'plausibility standard' as relating only to antitrust cases." *ATSI Commn's,* 493 F.3d at 98 n.2. It is less than clear, however, exactly "when factual 'amplification [is] needed to render [a] claim plausible.'" *Boykin v. Keycorp.*, 521 F.3d 202, 213 (2d Cir. 2008) (brackets in original) (quoting *Iqbal*, 490 F.3d at 158). Further analysis of the pleading standard

7

in a discrimination case is contained in the discussion below.

### B. Motion to Amend

Federal Rule of Civil Procedure ("Rule") 15(a) provides in pertinent part that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The decision whether to allow a party to amend his complaint is left to the sound discretion of the district court; there must, however, be good reason to deny the motion. *See Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995); *see also S.S. Silberblatt, Inc. v. E. Harlem Pilot Block-Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir. 1979). A motion to amend may properly be denied on the grounds of undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party by virtue of the allowance of the amendment. *See Dluhos v. Floating & Abandoned Vessel, Known as N.Y.*, 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Another "appropriate basis for evaluating the productivity of a proposed amendment lies in the relative futility of accepting the proposed amended complaint." *Wilson v. Toussie*, 260 F. Supp. 2d 530, 535 (E.D.N.Y. 2003); *accord Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999).

## II. The Parties' Contentions

Defendant maintains that the Amended Complaint must be dismissed because Plaintiff has failed to plead sufficient facts to support her claims for disparate treatment and hostile work environment and instead asserts only conclusory allegations. Defendant also argues that "numerous claims are time-barred, while the time frame of other alleged acts of discrimination is not identified;" "two retaliation causes of action pled by Plaintiff are duplicative of two other

causes of action also alleging retaliation" and "Plaintiff impermissibly conflates claims for hostile work environment and disparate treatment into single causes of action." (Def.'s Mem. in Supp. of Motion to Dismiss at 2.) Finally, Defendant argues that the proposed second amended complaint should be disallowed on the grounds of futility because it fails to cure the deficiencies of the amended complaint.

Plaintiff responds that the function of a complaint is give notice of the basis of the claim and that she has met that standard. In response to Defendant's conflation argument, Plaintiff disavows any claim for hostile work environment, insisting that her gender discrimination claims under both federal and state law are solely for disparate treatment. Plaintiff further maintains that the retaliation claims are appropriate and non-duplicative as she was retaliated against for her complaints of gender discrimination as well as for complaints of race discrimination. Finally, Plaintiff argues that she should be granted leave to file her proposed second amended complaint which provides further clarification as to her claims.

*Discussion*

**I. Failure to Plead Sufficient Facts**

Defendant argues that the Amended Complaint must be dismissed because it fails to allege sufficient facts to render Plaintiff's claims plausible. The Court disagrees.

Although Plaintiff's pleading presents, in some respects, the barest of allegations, under relevant Supreme Court and Second Circuit case law, read liberally the pleading is sufficient to give Defendant fair notice of Plaintiff's claims and the grounds upon which they rest and is therefore not subject to dismissal. *See Erickson v. Pardus,* – U.S. –, 127 S. Ct. 2197, 2200 (2007) (noting that "[s]pecific facts are not necessary" under Rule 8(a))). In *Boykin v. Keycorp.*,

an African-American female filed suit against lenders alleging that they denied her home equity loan application based upon her race, gender, and the location of her house in a minority-concentrated area. 521 F.3d at 206. In reversing the district court's dismissal of her complaint on the grounds that the discrimination claim was insufficiently pled, the Second Circuit explicitly rejected the following analysis of the district court:

> While Plaintiff generally alleges that KeyBank discriminated against her based on her race and sex, the Complaint contains no specific facts supporting her claims. The only specific acts alleged in the Complaint are that Key Bank denied Plaintiff's loan and failed to offer her other loan products. There are no factual allegations whatsoever that connect KeyBank's denial of Plaintiff's loan to a discriminatory motive or racial animus. In fact, each of Plaintiff's claims of racial discrimination is premised "upon information and belief."

*Id.* at 214. The district court "summed up its analysis by stating that '[I]t is not enough for Plaintiff to simply state that she is a black woman who was denied a loan.'" *Id*. The Second Circuit disagreed, finding that because Plaintiff "identified the particular events giving rise to her claim and alleged that she was treated less favorably than other loan applicants because of her race, her gender and the location of her property," *id*. at 215, Plaintiff's "allegations, taken as true, indicate the possibility of discrimination and thus present a plausible claim . . . ." *Id*. at 216. The court "emphasize[d] that [it was] expressing no opinion regarding the merits of Boykin's claims" and that "[t]he merits of a claim like Boykin's, which on its face present a plausible allegation of disparate treatment, should be tested on summary judgment."[1]

---

[1] The Court notes that the plaintiff in *Boykin* appeared *pro se* in that action. However, the court's holding was not limited to *pro se* pleadings. *See Boykin*, 521 F.3d at 215 (noting that the Supreme Court has "explicitly disavow[ed] that Rule 8(a) requires any plaintiff – let alone a *pro se* plaintiff – to plead 'specific facts.'").

*Id.*

Here, Plaintiff similarly alleges that she was disparately treated due to her sex, age and adoption of Asian children.[2] As in Boykin, she has identified the particular events giving rise to her claims. Read liberally, she alleges, *inter alia*, that her work was atypically scrutinized because she was female, she was denied a bonus because of her sex and she was terminated because of her age, sex and adoption of Asian children. She further alleges that she complained about being discriminated against because of her sex and was retaliated against by, *inter alia*, being assigned to work in the phone queue and being terminated. Finally, Plaintiff alleges that she complained about racist comments made at a meeting and received a warning in retaliation for those complaints and was terminated as a result. as well.

Accordingly, Defendant's motion to dismiss the Amended Complaint because it fails to provide "fair notice" of the claims asserted and the grounds upon which they rest, is denied.

## II. Duplicativeness of Retaliation Causes of Action

Defendant maintains that Plaintiff's seventh and eighth causes of action, asserting claims for retaliation under Title VII and NYSHRL, should be dismissed as duplicative of the third and fourth causes of action, which also assert claims for retaliation under Title VII and the NYSHRL. Defendant's argument is unavailing. The third and fourth causes allege federal and state claims for retaliation based on Plaintiff's complaints to Defendant of gender discrimination. In contrast, the seventh and eighth causes of action allege federal and state claims of retaliation based on Plaintiff's opposition to "race and color discrimination." These causes of action are premised

---

[2] In *Holcomb v. Iona College*, 521 F.3d 130, 131 (2d Cir. 2008), the Second Circuit held that "an employer might violate Title VII if it takes action against an employee because of the employee's association with a person of another race."

11

upon Plaintiff's complaints about the racist comments made about Asians at a September 7, 2005 meeting and the allegedly resultant warning she received, as well as her subsequent termination.

Because the third and fourth causes of action are based on Plaintiff's opposition to gender discrimination, while the seventh and eighth causes of action are based on Plaintiff's opposition to race and color discrimination they are not duplicative. *See generally* Fed. R. Civ. P. 10(b) ("Each claim founded upon a separate transaction or occurrence . . . shall be stated in a separate count."). Accordingly, the motion to dismiss the seventh and eighth causes of action as duplicative is denied.

**III. Conflation of Disparate Treatment and Hostile Work Environment Claims**

Defendants move to dismiss the first nine causes of action of the ground that they improperly conflate into single causes of action, claims asserting both disparate treatment and hostile work environment. Given some of the language contained in these counts, Defendant's objection would seem well founded. For example, the Amended Complaint alleges that "[a]n ordinary person would have found that the manner in which the plaintiff was treated unreasonable;" said language seems more suited to a hostile work environment. However, Plaintiff disavows any claims of hostile work environment. Given this disavowal, the claims will not be dismissed; concomitantly, Plaintiff will be held to her disavowal. The motion to dismiss due to conflation of separate claims is denied.

**IV. Time Barred Claims**

Defendant moves to dismiss as time barred (1) under Title VII any alleged conduct prior to October 2, 2005 and (2) under the NYSHRL any alleged conduct prior to March 13, 2004. Plaintiff responds that to the extent any alleged acts are time barred, they should properly be

considered as background evidence.

In *Nat'l R.R. Passenger Corp*, 536 U.S. 101 (2002), the Supreme Court held that "discrete discriminatory acts [under Title VII] are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. Instead, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.*[3] "[T]ermination, failure to promote, denial of transfer, [and] refusal to hire" are all discrete acts. *Id.* at 114. The Court recognized, however, that although a plaintiff cannot recover for "discrete acts of discrimination or retaliation that occur outside the statutory time period," *id.* at 105, an employee may "us[e] the prior acts as background evidence in support of a timely claim." *Id.* at 113.

Thus, pursuant to *Nat'l R.R. Passenger Corp.*, although Plaintiff may be permitted to present evidence at trial regarding prior discriminatory acts,[4] claims that are untimely are subject to dismissal.

Under Title VII discriminatory acts alleged to have occurred more than 300 days prior to the Plaintiff's EEOC filing are time barred. *See* 42 U.S.C. § 2000e-5(e)(1). As noted earlier, Plaintiff filed her charge of discrimination with the EEOC on June 29, 2006. Accordingly, to the extent that Plaintiff's Title VII claims are based on events occurring prior to October 2, 2005, the claims are dismissed.

NYSHRL claims are subject to a three-year statute of limitations. *See Bonner v.*

---

[3] The same is true for claims under the NYSHRL. *See Roberts v. County of Nassau*, 140 Fed. Appx. 277, 279 (2d Cir. 2005) (unpublished).

[4] The Court declines to address this evidentiary issue at this juncture and will defer, to an appropriate time, the issue of the admissibility of any time-barred acts as background evidence.

*Guccione*, 178 F.3d 581, 584 (2d Cir. 1999). This action was commenced on March 13, 2007; three years before commencement of this action, then, is March 13, 2004. Under state and municipal law, however, the statute of limitations is tolled during the pendency of any complaint filed with the New York Division of Human Rights ("NYSDHR"). *See Constance v. Pepsi Bottling Co.*, No. 03-CV-5009, 2007 WL 2460688, at *12 (E.D.N.Y. Aug. 24, 2007). Here, Plaintiff filed a complaint with the EEOC on June 29, 2006. "A charge filed with the EEOC should be treated as constructively cross-filed with the NYSDHR and the statute of limitations for state claims should be tolled during the pendency of a claim filed with the EEOC." *Id.* Accordingly, the limitations period for Plaintiff's claims under the NYSHRL is extended by the 243 days between the filing and denial of Plaintiff's EEOC charge, from June 29, 2006 to February 27, 2007, respectively. Accordingly, the motion to dismiss NYSHRL claims is granted only to the extent of claims based on events occurring prior to July 14, 2003.

## V. The Age Discrimination Claim

Defendant seeks dismissal of Plaintiff's ADEA claim on two grounds. First, it is argued that Plaintiff cannot rely solely on the allegation that she was replaced by a younger worker because she "fails to set forth any factual information whatsoever as to the identity of this purportedly younger individual, his age, his position or his date of hire. Second, it is alleged that the claim is deficient because she was a member of the protected age group at the time of her hire. The Court is underwhelmed by both these arguments.

As discussed earlier, a discrimination Plaintiff need only identify the particular events giving rise to her claim and allege that she was treated less favorably than others because of her age. *See Boykin*, 521 F.3d at 215. Here, Plaintiff alleges that she satisfactorily performed her job

14

and that she was terminated and replaced by a younger worker. That is sufficient.[5] A plaintiff is not expected to know, nonetheless plead, every particular about her replacement.

Nor does the fact that plaintiff was within the protected class at the time she was hired necessarily foreclose her age discrimination claim. Although "the inference of discrimination is much weaker where plaintiff is well within the protected class when first hired," *O'Connor v. Viacom, Inc.*, 1996 WL 194299, *7 (S.D.N.Y. Apr. 23, 1996), *aff'd*, 104 F.3d 356 (2d Cir. 1996), it is not *a fortiori* foreclosed, and other factors must also be considered. For example, the inference would not necessarily be weakened if the same actor was not responsible for both the hiring and the firing. *See, e.g., Spiegler v. Israel Discount Bank of New York*, 2003 WL 21488040, *10 (S.D.N.Y. June 25, 2003).

The motion to dismiss the age discrimination claims is denied.

## VI. The Cross-Motion to Amend

Plaintiff seeks to a file a second amended complaint to provide "additional clarification" with regard to her claims. Defendant opposes the request on the ground of futility, arguing that the proposed second amended complaint, like its predecessor, fails to provide sufficient notice of the basis for Plaintiff's claims.

Having already found that the Amended Complaint complies with applicable pleading requirements, the Court rejects Defendant's futility argument, with one exception. As discussed earlier, certain of the alleged discriminatory acts are time-barred. Accordingly, the motion to amend is granted except as to those alleged discriminatory acts which occurred prior to July 14,

---

[5] The Court also notes, that in her Proposed Second Amended Complaint, Plaintiff identifies several other females over the age of forty who were terminated.

2003.

## Conclusion

Defendant's motion to dismiss is granted to the extent that Plaintiff's Title VII claims based on events occurring prior to October 2, 2005 and NYSHRL claims based on events occurring prior to July 14, 2003 are dismissed as time barred; the motion is otherwise denied. Plaintiff's cross-motion to further amend her complaint is granted except to the extent of alleged discriminatory acts occurring prior to July 14, 2003.

**SO ORDERED.**

Dated: Central Islip, New York
      August 20, 2008

/s/
Denis R. Hurley
Senior District Judge